UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mark R. Becker, et al.,

     Plaintiffs,

v.

International Brotherhood of
Teamsters Local 120,

     Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-142 (MJD/JJG)

_____

     Marshall H. Tanick and Brian N. Niemczyk, Hellmuth & Johnson, PLLC, Counsel for Plaintiffs.

     Martin J. Costello and Katrina E. Joseph, Hughes & Costello, Counsel for Defendant International Brotherhood of Teamsters Local 120.

_____

     This matter is before the Court on cross motions for partial summary judgment.

## I.    Factual Background

     This is a putative class action involving current or former employees of

U.S. Foodservice, Inc. ("USF")[1] that were members of the International

_____

     [1]By Order dated May 16, 2011, the Court dismissed the claims against USF, as Plaintiffs did not allege any wrongdoing on the part of USF in the Complaint.

1

Brotherhood of Teamsters Local 120 ("Union") and who worked at USF's Eagan

facility before it closed in December 2008.

Employees of the Eagan facility were beneficiaries of a pension fund

operated by the Central States Pension Plan ("Central States").  (Becker Aff. ¶ 2.)

USF also had a facility in Plymouth, Minnesota, and those employees were

beneficiaries of a separate pension fund known as the Minneapolis Food

Distributing Industry Pension Plan ("MFPP").  (Id. ¶ 3.)  The MFPP had six

trustees; three were officers of the Union and three were representatives of

companies with which the Union had collective bargaining agreements.

(Joseph Decl., Ex. 2 (Becker Dep. Vol. II at 366).)

Plaintiffs allege that after USF announced the closure of the Eagan facility

at the end of 2008, a number of grievances were filed and the Union and USF

thereafter engaged in negotiations.  (Becker Affidavit ¶ 4; Joseph Decl. Ex. 9

(Becker Dep. Ex. 15).)   During these negotiations, concern was raised that those

Eagan employees who transferred to the Plymouth facility and thereafter became

beneficiaries of the MFPP would incur reductions of prior benefits if Central

States deemed the transfer to constitute a "Rehabilitation Plan Withdrawal"

which could result in significant diminution of prospective pension benefits.

(Becker Aff. ¶ 4.)  Ultimately, the Union and USF reached an agreement on

November 3, 2008 ("Transition Agreement") wherein USF would offer all Eagan

employees the opportunity to transfer to the Plymouth facility, retain their jobs,

benefits, seniority, shifts and work assignments, or be eligible for severance or

recall within six months if not able to transfer.  (Id. ¶ 5, Ex. 1.)  All transferring

employees would also remain in the Central States Fund without any withdrawal

liability.  The Transition Agreement, however, was conditioned upon approval

by Central States and MFPP.  (Id.)

Central States indicated that it would approve the Transition Agreement.

On November 6, 2008, however, MFPP declined to approve the Transition

Agreement.  (Id. ¶ 6, Ex. 2.)  Plaintiffs assert that they later learned that the three

union members that were also trustees for the MFPP voted against the Transition

Agreement, even though these union members had negotiated the Transition

Agreement with USF.  (Id.)   The Eagan facility was closed between December 13-

24, 2008.  Thirty-four employees from the Eagan facility took new jobs in the

Plymouth facility, and as a result of such transfer, they each lost seniority and

received reduced benefits, and became beneficiaries of the MFPP.  The remaining

Eagan employees, approximately 146 of them, lost their jobs; 72 of which are

plaintiffs in this action.  (<u>Id.</u> ¶ 8.)

On December 9, 2008, certain plaintiffs filed an unfair labor practice charge against the Union.  (Joseph Decl. Ex. 32 (Becker Dep. Ex. 80).)  In that charge, the plaintiffs claimed that since September 2008, the Union "failed to fairly represent employees of Northstar Foods[2] by engaging in negotiations with the Employer designed to serve interests other than the represented employees.  Through these and other acts, the Union has failed to fairly represent employees of Northstar Foods."  (<u>Id.</u>)   By letter dated February 10, 2009, the National Labor Relations Board ("NLRB") notified these plaintiffs that it found insufficient evidence to support their unfair labor practice claim.  (<u>Id.</u>, Ex. 35 (Becker Dep. Ex. 86).)

In the appeal to the NLRB decision, Plaintiff Becker argued:

the union's claim that it is still representing us by arbitrating a grievance is a case of them misleading the members and the board.  If their goal was to win a grievance, they would not have bargained a workable agreement so that US Foodservice could reach an agreement with Central States and then claim that they are running away from them (Central States) and then tell the company to hire us as new hires, misleading the members as to the impact of the Central States rule.

This is more than just bad judgment; it was a well-planned scam to keep us from staying active members.

---

[2]The Eagan facility was named North Star Foodservice by USF in 2005 to differentiate it from the Plymouth facility.  (Joseph Decl., Ex. 1 (Becker Dep. at 16-17).)

(Id. Ex. 37 (Becker Dep. Ex. 94).)

After the Transition Agreement was rejected by MFPP, USF and the Union

engaged in negotiations for compensation to those Eagan employees that would

not transfer to the Plymouth facility.  USF offered these employees a severance

package in July 2009, which provided one week severance for each full year of

service, up to 26 weeks.  (Id., Ex. 52.)  The Union conducted a vote on whether to

accept the terms of the severance package, and a majority of the Eagan employees

rejected it.  (Id., Ex. 29 (Vote Tally).)

In the meantime, the Union and USF were involved in arbitration of the

grievances filed in September 2008.  In a decision dated July 9, 2010, the arbitrator

ruled in favor of USF, finding that the company did not have a duty under

federal labor law to transfer employees from the Eagan facility to the Plymouth

facility.  (Joseph Decl. Ex. 36 (Arbitrator Award).)

Plaintiffs served a copy of the Complaint in this case on the Union on

January 3, 2011.  (Doc. No. 1 at 14 (Affidavit of Service.)  In their Complaint,

Plaintiffs claim that the actions of the Union officers, who were also trustees of

the MFPP, caused them to lose their jobs, wages and benefits, or to obtain less

favorable jobs and benefits, for those who went to work in the Plymouth facility

by participating in the decision not to approve the Transition Agreement.

(Comp. ¶ 30.)  Plaintiffs further claim that such actions were arbitrary,

discriminatory and in bad faith, and constituted a breach of its duty of fair

representation to Plaintiffs. (Id. ¶ 31.)

## II.     Standard for Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine issue as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' -

that is, pointing out to the district court - that there is an absence of evidence to

support the nonmoving party's case."  Id. at 325.  The party opposing summary

judgment may not rest upon mere allegations or denials, but must set forth

specific facts showing that there is a genuine issue for trial.  Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

III.    **Analysis**

Under Section 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185, an employee may bring an action against the union for breach of its

duty of fair representation and against the employer for breach of contract.  Jones

v. United Parcel Serv., 461 F.3d 982, 994 (8th Cir. 2006).  Such claims are referred

to as "hybrid" claims and require the employee to prove both the breach of

contract and the breach of duty of fair representation.  Vaca v. Sipes, 386 U.S. 171,

186-87 (1967).   The applicable statute of limitations for actions asserting a breach

of duty of fair dealing is six months.  DelCostello v. Int'l Bd. of Teamsters, 462

U.S. 151, 163 (1983).  Such a claim "accrues 'when the claimant discovers, or in

the exercise of reasonable diligence, should have discovered, the acts constituting

the alleged violation.'" Schuver v. Mid American Energy Co., 154 F.3d 795, 800

(8th Cir. 1998) (citations omitted).  "A reasoned analysis of the question of when

a duty of fair representation claim accrues must necessarily focus on the context

in which the claim arose."  Skyberg v. United Food and Comm'l Wkers Int'l

Union, 5 F.3d 297, 301 (8th Cir. 1993).

As clearly set forth in the Complaint, Plaintiffs base their claim of breach of

duty of fair representation on the allegations that the Union officers/MFPP

7

trustees caused them to lose their jobs, wages and benefits, or to obtain less

favorable jobs and benefits for those who went to work in the Plymouth facility,

by declining to adopt the Transition Agreement.  (Comp. ¶¶  30, 31.)   The Union

argues that based on these allegations, the breach of duty of fair representation

accrued on December 9, 2008 - the date Plaintiff Becker filed an unfair labor

practice charge based on the same allegations.  See Washington v. Serv. Emps.

Int'l Union, 130 F.3d 825, 826 (8th Cir. 1997) (finding that a § 301 claim accrued on

the date the plaintiff filed an unfair labor practice charge alleging the same

breach).  See also Scott v. United Auto, 242 F.3d 837, 840 (8th Cir. 2001) (§ 301

claim accrued when plaintiff filed unfair labor practice charge); Livingstone v.

Schnuck Market,, Inc., 950 F.2d 579, 583 (8th Cir. 1991) (same); Gustafson v.

Cornelius Co., 724 F.2d 75, 79 n.10 (8th Cir. 1983) (same).

Plaintiffs respond that while a few union members did file an unfair labor

practice charge with the NLRB after the Eagan plant closed, the NLRB did not

pursue the charge.  Plaintiffs further assert that union members urged the Union

to pursue a grievance against USF, but that the Union kept them in the dark

about those proceedings.  (Becker Aff. ¶ 11.)  It is Plaintiffs' position that under

these circumstances, the statute of limitations did not accrue on their claim of

breach of duty of fair representation until the arbitration proceedings were complete.  See Childs v. Pa. Fed'n Bhd of Maintenance Way Emp., 831 F.2d 429, 434 (3d Cir. 1987) (finding that a claim for breach of duty of fair representation accrues at "the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage"); Vadino v. A. Valey Eng'rs, 903 F.2d 253, 261 (3d Cir. 1990).  In this case, the Union did pursue a grievance, and until the Arbitrator issued a decision, Plaintiffs still had a chance that the closure could be remedied, and they could retain their jobs.  Plaintiffs thus argue that this action was timely filed 178 days after the date of the arbitrator's award.

The Court finds that Childs is inapposite as the grievance pursued by the Union had no bearing on the unfair labor practice claim that has been asserted in this case.  Evans v. Northwest Airlines, Inc., 29 F.3d 438, 441 (8th Cir. 1994). The grievance addressed the issue of whether **USF** violated the collective bargaining agreement when it closed the Eagan plant.  (Joseph Decl., Ex. 12 (Grievance Form).)  By contrast, the unfair labor practice claim involves allegations that the "action by the Union officers who were the Trustees of the MFPP to cause the MFPP to decline to approve the Agreement was arbitrary, discriminatory, and in bad faith because it contravened the best interests of the

members of the Union who worked at the Eagan facility . . .  The action by the

Union, through its officers, benefitted MFPP at the expense of Plaintiffs, who

were adversely and detrimentally affected by the rejection of the Agreement."

(Comp. ¶ 31.)   In fact, during the arbitration proceedings, USF raised the issue

that Union officers may have acted in bad faith towards its own members by not

supporting the Transition Agreement.  (Joseph Decl., Ex. 36 (Arbitrator's Award

at 35).)  In his decision, however, the Arbitrator noted that as the issue of whether

the Union may have acted in bad faith did not go to a decision on the merits of

the case before him, he would not make a specific finding of fact on that issue.

(Id.)

        The record also belies Plaintiffs' claims that they were not put on notice of

the Union's alleged breach, and that they were also kept in the dark about the

claims addressed in the arbitration.  Plaintiffs were put on notice of the Union's

alleged breach by at least December 9, 2008, when Plaintiff Mark Becker, Chief

Steward for the day shift employees at the Eagan facility, filed a charge with the

NLRB.  (Joseph Decl., Ex. 32 (Becker NLRB Charge) Ex. 33 (Becker Aff. in Support

of NLRB Charge).)  In a confidential affidavit submitted in support of the Becker

charge, Carl Bartell, assistant steward, asserted his belief that the "Union

bargained for us when knowing all along they would be required to reject the agreement as trustees of the pension plan." (Id., Ex. 34 (Bartell Aff. in Support of NLRB Charge).)  Becker was thereafter notified by letter dated February 10, 2009 that his charge would be dismissed based on a finding of insufficient evidence of a violation of the National Labor Relations Act.  (Id., Ex. 35 (NLRB Decision Dismissing Charge).)  Becker filed an appeal of this dismissal, which was denied by the General Counsel of the NLRB in Washington.  (Id., Ex. 2 (Becker Dep. Vol. II at 312).)  In his appeal, Becker argued that the Union was trying to mislead the membership through the arbitration proceeding.  (Id., Ex. 37 (Becker Dep. Ex. 94).)  Clearly, Becker, as a representative of the named plaintiffs, was on notice that the arbitration proceeding would not address the unfair labor practice charge against the Union.

Based on the above, the Court finds that Plaintiffs' breach of fair representation claim accrued on December 9, 2008 - the date Plaintiff Becker filed an unfair labor practice charge with the NLRB.  See Scott, 242 F.3d at 840.  As this action was not served until January 2011, the claim is time-barred.

**IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 37] is

**DENIED;** and

2.      Defendant International Brotherhood of Teamsters Local 120's

Motion for Partial Summary Judgment [Doc. No. 48] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:      October 31, 2012


s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court